IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SOUTHWEST MARINE AND GENERAL
INSURANCE COMPANY,
      Plaintiff and Counter Defendant,
-vs-

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, in Its
Capacity as Liquidating Agent for Lakeside
Federal Credit Union,
      Defendant and Counter-Plaintiff.

CAUSE NO.:
AU-17-CA-00367-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Southwest Marine and General Insurance Company (Southwest Marine)'s Motion to Compel [#37], National Credit Union Administration Board (the Board)'s Response [#40] in opposition, and Southwest Marine's Reply [#43] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now issues the following opinion and orders.

**Background**

Although this is a discovery dispute, the Court briefly relays the facts of the case for context. In 2014, Southwest Marine issued a fidelity bond to Lakeside Federal Credit Union (Lakeside). Am. Compl. [#26] at 4. The fidelity bond provided Lakeside with coverage for losses resulting from dishonest acts committed by its employees or directors. *Id.* Lakeside paid Southwest Marine a premium of $10,248 for this coverage. *Id.* at 5.

In April 2015, Lakeside notified Southwest Marine that it had incurred a loss covered under the bond in connection with "suspicious transactions" linked to two of its employees. *Id.*

1

Three months later, in July 2015, Lakeside was placed into liquidation. Mot. Compel [#37] at 1. The Board was appointed liquidating agent for Lakeside and took over Lakeside's claim for coverage (the Claim) under the fidelity bond. Am. Compl. [#26] at 5. In this capacity, the Board submitted a proof of loss in support of the Claim on September 15, 2015, claiming a dishonest "check-kiting" scheme by two Lakeside employees had resulted in losses to Lakeside of $690,120.88. *Id.*

In an attempt to avoid making payment under the bond, Southwest Marine reviewed the bond application submitted by Lakeside and concluded Lakeside had made several incorrect statements of material fact regarding the preventative measures it used to detect and deter check kiting. *Id* at 6–8. On this basis, Southwest Marine sent a letter to the Board on October 19, 2015, stating that the fidelity bond had been rescinded due to incorrect statements of material fact in the application. *Id.* at 8–9. Southwest Marine also returned the premium paid by Lakeside and warned that if Southwest Marine did not receive a response within thirty days, it would assume that the Board agreed with the decision to rescind the bond. *Id.* The Board deposited the $10,248 premium refund check but did not otherwise respond to the letter until fourteen months later, when the Board notified Southwest Marine that it *did* in fact wish to contest the rescission. *Id.* at 10–11. The Board then attempted to return the already-cashed premium refund, which Southwest Marine declined to accept. *Id.*

Southwest Marine subsequently filed this lawsuit seeking a declaratory judgment affirming rescission of the fidelity bond under Indiana state law, and the Board counterclaimed for breach of contract, also under Indiana state law, based on Southwest Marine's failure to pay the Claim. Am. Compl. [#26]. In part, the Board argues it did not knowingly agree or consent to rescission when it deposited the premium refund check because the premium refund check was

2

deposited according to an automatic internal process and the Board lacked discretion to alter this process. Resp. [#40] at 5.

Southwest Marine now moves to compel the production of documents concerning the Board's knowledge and intent regarding Southwest Marine's notice of rescission. Mot. Compel [#37] at 5–6. Southwest Marine argues the Board waived privilege as to these documents when the Board put its knowledge and intent at issue by asserting it lacked sufficient knowledge to agree to rescission of the bond or to object to such rescission. *Id.* In response, the Board argues it did not waive privilege when it put its knowledge and intent at issue because it does not intend to use the privileged documents to prove its lack of knowledge. Resp. [#40] at 4–5. This pending motion is ripe for review.

## Analysis

### I. Choice of Law

As a preliminary matter, the parties dispute whether the Court should apply Indiana privilege law or the federal common law of privilege. In most circumstances, the federal common law of privilege applies when the action arise under federal law. *Willy v. Admin. Review Bd.*, 423 F.3d 482, 495 (5th Cir. 2005). But when state law provides the rule of decision for the underlying claim or defense, state privilege law governs. FED. R. EVID. 501.

Here, Indiana privilege law applies because both parties assert Indiana state law claims and Indiana state law provides the rule of decision for the parties' underlying claims. *See* Am. Compl. [#26] at 7 (requesting the Court find rescission under Indiana common law); Response [#40] at 3 n.2. Southwest Marine protests that federal privilege law should apply because this case was brought under federal question jurisdiction. Reply [#43] at 1–2. While this is true, Federal Rule of Evidence 501 unequivocally requires courts to apply state privilege law where

3

state law provides the rule of decision for claims at issue. FED. R. EVID. 501. Thus, because Indiana law provides the rule of decision for the underlying claims, Indiana privilege law applies.

## II. Attorney-Client Privilege

Attorney-client privilege protects against the disclosure of confidential communications between an attorney and a client and renders such communications undiscoverable. *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 995–97 (Ind. 2014). To invoke attorney client privilege, the party asserting the privilege must establish by a preponderance of the evidence that (1) an attorney-client relationship exists; (2) the communication at issue was confidential; and (3) the communication occurred in the course of obtaining legal advice. *Id.* Once established, attorney-client privilege may be waived either explicitly or implicitly by the party asserting the privilege. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Particularly relevant here, the asserting party may implicitly waive privilege if it "relies specifically on advice of counsel to support a claim or defense and intends to prove that claim or defense using privileged communications." *Franklin United Methodist Home, Inc. v. Lancaster Pollard & Co.*, 909 F. Supp. 2d 1037, 1047 (S.D. Ind. 2012) (internal citation and quotation marks omitted).

In this instance, the Board has not waived privilege because it has not relied specifically on the advice of counsel to support a claim or defense, nor does it intend to prove that claim or defense using privileged communications. Rather, the Board has merely asserted that it lacked sufficient knowledge to agree or object to rescission of the bond. Resp. [#40] at 5–6. Southwest Marine argues that by placing its knowledge at issue, the Board has waived privilege as to all documents touching on the issue of knowledge. Mot. Compel [#37] at 5. But the mere fact that some attorney-client communications might bear on the issue of the Board's knowledge does not mean the Board has waived privilege as to all communications touching on the Board's

4

knowledge and intent. *See Franklin*, 909 F. Supp. 2d 1037 ("The relevance of privileged material to a claim or defense at issue is not a sufficient basis for finding a waiver of the privilege." (internal quotation marks omitted)); *see also Rhone-Poulenc Rorer, Inc. v. Home Dendem. Corp.*, 32 F.3d 851, 864 (3d Cir. 1994) ("A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action.").

Southwest Marine also protests that it will not be able to fully dispute the Board's position—that the Board lacked sufficient knowledge to agree or object to rescission—without access to the Board's attorney-client communications. Mot. Compel [#37] at 6. The Court disagrees. Southwest Marine retains the ability to depose the Board on the subject of its knowledge and intent regarding rescission of the bond. It likewise retains the ability to cross-examine any Board witness that testifies to lack of knowledge.

For these reasons, the Court denies Southwest Marine's motion to compel and concludes the Board did not waive attorney-client privilege simply by placing its knowledge at issue in the litigation.

## II. Privilege Log Issues

Southwest Marine complains that the Board has waived privilege as to all documents created between September 16, 2015 and December 20, 2015 because the Board failed to list these documents on its privilege log. Mot. Compel [#37] at 4–5. The Court agrees with Southwest Marine that the Board should have logged documents created between these dates on its privilege log and orders that the Board supplement its privilege log to include these documents. But the Court declines at this time to find that the Board waived privilege as to the documents when it failed to initially include the documents in the privilege log.

## Conclusion

Although the Court has reviewed the documents in question and finds them of dubious utility, it concludes the Board did not waive attorney-client privilege by placing its knowledge and intent regarding rescission at issue. The Court also concludes that the Board erred in failing to log documents created between September 16, 2015 and December 20, 2015.

Accordingly,

IT IS ORDERED that Southwest Marine's Motion to Compel [#37] is DENIED; and

IT IS FURTHER ORDERED that Southwest Marine has fourteen (14) days to supplement its privilege log with any purportedly privileged documents created between September 16, 2015 and December 20, 2015.

SIGNED this the 30th day of November 2018.

SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE