IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

SOUTHWEST MARINE AND GENERAL
INSURANCE COMPANY,
    Plaintiff and Counter Defendant,
-vs-

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, in Its
Capacity as Liquidating Agent for Lakeside
Federal Credit Union,
    Defendant and Counter-Plaintiff.

CAUSE NO.:
AU-17-CA-00367-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant National Credit Union Administration Board (the Board)'s Motion for Summary Judgment [#51] and Memorandum of Law in Support [#52], Plaintiff Southwest Marine and General Insurance Company (Southwest Marine)'s Response [#55] in opposition, and the Board's Reply [#58] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now issues the following opinion and order.

### Background

This case involves a dispute over the purported rescission of a fidelity bond (the Bond) issued by Southwest Marine. The Bond was issued in 2014 to Lakeside Federal Credit Union (Lakeside) and provided Lakeside with coverage for losses resulting from dishonest acts committed by its employees or directors. Am. Compl. [#26] at 4. Lakeside paid Southwest Marine a premium of $10,248 for this coverage. *Id.* at 5.

In April 2015, Lakeside notified Southwest Marine that it had incurred a loss covered under the Bond in connection with "suspicious transactions" linked to two of its employees. *Id.*

1



Three months later, Lakeside was placed into liquidation. *Id.* The Board was appointed liquidating agent for Lakeside and took over Lakeside's claim for coverage (the Claim) under the Bond. *Id.* In this capacity, the Board submitted a proof of loss in support of the Claim on September 15, 2015, explaining a dishonest "check-kiting" scheme by two Lakeside employees had resulted in losses to Lakeside of $690,120.88. *Id.*

In an attempt to avoid making payment under the bond, Southwest Marine reviewed the bond application submitted by Lakeside and concluded Lakeside had made several incorrect statements of material fact regarding the preventative measures it used to detect and deter check kiting. *Id* at 6–8. On this basis, Southwest Marine sent a letter to the Board on October 19, 2015, stating that the Bond had been unilaterally rescinded due to incorrect statements of material fact in the application. *Id.* at 8–9. Southwest Marine also returned the premium paid by Lakeside and warned that if Southwest Marine did not receive a response within thirty days, it would assume that the Board agreed with the decision to rescind the Bond. *Id.* The Board deposited the $10,248 premium refund check but did not otherwise respond to the letter until fourteen months later, when the Board notified Southwest Marine that it *did* in fact wish to contest the rescission. *Id.* at 10–11. The Board then attempted to return the already-cashed premium refund, which Southwest Marine declined to accept. *Id.*

Southwest Marine subsequently filed this lawsuit seeking a declaratory judgment affirming rescission of the Bond, and the Board counterclaimed for breach of contract based on Southwest Marine's failure to pay the Claim. Am. Compl. [#26]; Def.'s Am. Answer [#28].[1] In response to the Board's counterclaim, Southwest Marine asserted five affirmative defenses. Pl.'s Am. Answer [#27] at 9–16.

---

[1] The Board's counterclaim was first asserted in its original Answer [#16] and was incorporated into the Board's Amended Answer. Def.'s Am. Answer [#28] at 11.

2

## Analysis

The Board now moves for summary judgment on Southwest Marine's claims and affirmative defenses. Mot. Summ. J. [#51] at 1–2. First, the Board contends 12 U.S.C. § 1787(b)(13)(D) deprives this Court of jurisdiction over Southwest Marine's claims and affirmative defenses. *Id.* at 1. In the alternative, the Board contends it is entitled to summary judgment on those claims and affirmative defense because the Court is statutorily barred from granting Southwest Marine's requested relief. *Id.* at 2. The Court considers each of these arguments in turn.

### I. Subject Matter Jurisdiction

#### A. Legal Standard

The Board first contends this Court lacks jurisdiction to hear Southwest Marine's claims or its affirmative defenses. *See* Mot. Summ. J. [#51] at 1.

Under Rule 12(b)(1),[2] claims may be dismissed for lack of subject matter jurisdiction when the court lacks the statutory power to adjudicate the claim. *See* FED. R. CIV. P. 12(b)(1); *see also Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Jurisdiction is a threshold issue that must be resolved before any consideration of the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). The plaintiff bears the burden of establishing a federal court has jurisdiction to adjudicate its claims. *See, e.g., Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018).

#### B. Application

Under 12 U.S.C. § 1787(b), one of the Board's primary powers as liquidating agent is to "collect all obligations and money due to the credit union" and to "conserve the assets and

---

[2] Although the Board moves for summary judgment under Rule 56, the parties agree the issue of subject matter jurisdiction is properly evaluated under Rule 12(b)(1). *See* Resp. [#55] at 1–2; *see also* Reply [#58] at 2 n.1.

property of the credit union." *Id.* § 1787(b)(2)(B)(ii), (iv). Towards this end, § 1787 positions the Board as the initial arbiter of claims brought against the credit union. *See id.* § 1787(b)(3)(A) (permitting the Board to "determine claims in accordance with the requirements of this subsection"). After a party files a claim with the Board, the Board has 180 days to determine whether to allow or disallow the claim and to notify the claimant of this determination; this deadline may be extended by written agreement between the claimant and the Board. *Id.* § 1787(b)(5)(A)(i)-(ii). A claimant may obtain judicial review of the Board's determination on a claim if the claimant files suit within 60 days of either the end of the 180-day period or the date the claimant received notice that the Board had disallowed its claim, whichever is earlier. *Id.* § 1787(b)(6)(A). If a claimant fails to file suit within this 60-day window, the claim shall be deemed finally disallowed "and the claimant shall have no further rights or remedies with respect to such claim." *Id.* § 1787(b)(6)(B).

To prevent claimants from circumventing the Board and proceeding directly to the district court, § 1787(b)(13)(D) divests courts of jurisdiction over: (1) "any claim or action for payment from . . . the assets of any credit union for which the Board has been appointed liquidating agent"; (2) "any claim or action seeking a determination of rights with respect to" such assets; or (3) "any claim relating to any act or omission of [a] credit union or the Board as liquidating agent" 12 U.S.C. § 1787(b)(13)(D)(i)-(ii). The only exception to this jurisdictional bar is where a litigant exhausts her administrative remedies by submitting the claim or action to the Board in accordance with the administrative review process outlined in § 1787(b). *See id.* § 1787(b)(13)(D) ("Except as otherwise provided in this subsection . . . ."); *see also FDIC v. Scott*, 125 F.3d 254, 257 (5th Cir. 1997) (noting that identical language in a similar statute has been "uniformly" interpreted as "establish[ing] an administrative exhaustion requirement").

Southwest Marine argues § 1787(b)(13)(D)'s exhaustion requirement does not apply because the Bond is not an asset and because the jurisdictional bar applies only to claims brought by creditors. Alternatively, Southwest Marine contends it complied with the exhaustion requirements.

1. **Whether the Bond Is an Asset**

The parties do not dispute that § 1787(b) does not define the term "asset," nor do they dispute that, in general, fidelity bonds may properly be considered assets of the Board. Southwest Marine contends, however, that a contract that is rescinded based on based on false statements of material fact is not an "asset" under § 1787(b)(13)(D). Resp. [#55] at 4. And, according to Southwest Marine, because the Bond was not an "asset" under § 1787(b)(13)(D), the Court has jurisdiction over the claims in Southwest Marine's complaint.

The Court disagrees. Because the term "asset" is not defined in § 1787(b), the Court interprets the term according to its plain usage. *See, e.g., United States v. Apfelbaum*, 445 U.S. 115, 121 (1980). Under its plain usage, an "asset" is "[p]roperty of all kinds, real and personal, tangible and intangible . . . . The entire property of a person, association, corporation, or estate that is applicable or subject to the payment of . . . debts." *Asset*, Black's Law Dictionary (6th ed. 1990). Southwest Marine does not explain how unilateral rescission impacts either the Bond's status as property of the Board or the Board's ability to use the Bond as payment of debts, and it has therefore failed to show why the Bond is not an "asset" under § 1787(b)'s plain text.

Southwest Marine counters by arguing that courts, including the Fifth Circuit, have held void contracts are not assets under 12 U.S.C. § 1823(e) and that the reasoning supporting these decisions "applies equally to § 1787." Resp. [#55] at 14.

This argument fails. For starters, the cases holding that void contracts are not assets under § 1823(e) are easily distinguishable from this case. For example, in *Olney Savings & Loan Association v. Trinity Bank Savings Association*, 885 F.2d 266 (5th Cir. 1989), the Fifth Circuit held that a federal agency appointed as conservator did not take a participation agreement as an asset when the agency had been appointed conservator after the participation agreement had been voided by a final judgment of rescission. *Id.* at 275. In this case, however, the Board had been appointed conservator before Southwest Marine tried to have the Bond rescinded, and there has been no final judgment of rescission. More importantly, the reasoning behind decisions like *Olney Savings and Loan* does not "appl[y] equally" to the § 1787 context. Courts have refused to apply § 1823(e) to void contracts because doing so would unfairly prohibit parties from presenting defenses based on fraudulent misrepresentations and would grant an unfair advantage to the conservator. *See FDIC v. Aetna Ca. & Sur. Co.*, 947 F.2d 196, 208 (6th Cir. 1991) ("To strip Aetna of the defense of material misrepresentation . . . would effectively deny Aetna of the benefit of the bargain."). These concerns are not implicated by requiring parties to exhaust their administrative remedies on a claim that an asset is void prior to filing suit. And permitting parties to circumvent § 1787's administrative review process by unilaterally rescinding a bond based on material misrepresentations would significantly impact the Board's ability to "quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." H.R. REP. NO. 101-54(I), at 215, *reprinted in* 1989 U.S.C.C.A.N. 86, 215. The therefore Court concludes the Bond is an asset under § 1787(b)(13)(D).

### 2.     Whether § 1787(b)(13)(D) Applies to Debtor's Claims

Southwest Marine next contends that even if the Bond were an asset, § 1787(b)(13)(D) applies to creditors' claims but not to debtors' claims.

6

Section 1787(b)(13)(D)'s plain text does not explicitly limit its application to creditors' claims. Instead, it bars any "action seeking a determination of rights with respect to [] the assets of any credit union for which the Board has been appointed liquidating agent" unless the litigant first submitted its claims to the Board for review. 12 U.S.C. § 1787(b)(13)(D); *see also Scott*, 125 F.3d at 257. As a lawsuit requesting the Court to determine whether the Board has a right to collect from Southwest Marine on the Bond, Southwest Marine's claims plainly fall within this jurisdictional bar.

Southwest Marine concedes that § 1787(b)(13)(D)'s jurisdictional bar "appears broad," but it argues that § 1787(b)(13)(D) must be considered within the wider context of § 1787(b)'s claims procedure. Resp. [#55] at 15–16. Because § 1787(b)'s claims procedure relates to creditors' claims, Southwest Marine contends § 1787(b)(13)(D) must only apply to creditors claims. *See id.* at 16–18. This contention fails for three reasons.

First, as noted above, the plain text of § 1787(b)(13)(D) unambiguously refers to "*any* action seeking a determination of rights*,*" 12 U.S.C. § 1787(b)(13)(D), not merely actions brought by creditors. Second, there is nothing in the statute to support Southwest Marine's contention that § 1787(b)(13)(D)'s jurisdictional bar applies only to claims that are capable of resolution by the Board's claims procedure. *See id.* And third, at least one Fifth Circuit case has previously applied § 1787(b)(13)(D)'s jurisdictional bar to debtors' claims. *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir. 1992) (holding that mortgagors were required to present their negligence claim for administrative review prior to filing suit).

Accordingly, § 1787(b)'s exhaustion requirement applies to Southwest Marine's claims and the Court is barred from exercising jurisdiction unless Southwest Marine complied with that requirement.

### 3. Whether Southwest Marine Complied with § 1787(b)

Southwest Marine finally argues that this Court has jurisdiction over its complaint because Southwest Marine complied with § 1787(b)'s administrative review process prior to filing suit. According to Southwest Marine, it submitted a claim with the Board when it sent the Notice of Rescission and premium refund check on October 19, 2015, and the Board "implicitly allowed" its claim when it deposited the refund check. Resp. [#55] at 12–13. In response, the Board argues that Southwest Marine's actions do not meet the statutory requirements for submitting a claim and that, even if they do, the Board did not allow the claim when it deposited the refund check. *See* Reply [#58] at 11–12.

The Court concludes Southwest Marine did not comply with the administrative procedure outlined in § 1787(b) because its suit is untimely. Potential litigants must file suit within 60 days of the claimant receiving notice that the Board disallowed its claim or 180 days after the claim was filed. 12 U.S.C § 1787(b)(6). Assuming for argument's sake that Southwest Marine's actions constituted submitting a claim to the Board, it was required to file suit no later than June of 2016, but this lawsuit was filed on April 21, 2017. *See* Compl. [#1]. Admittedly, the Board did change its course in late December 2016 when it notified Southwest Marine that it wished to contest the rescission and attempted to return the premium refund check. *See* Am Compl. [26] at 10–11. But even if the Court construes these actions as the Board disallowing Southwest Marine's claim, Southwest Marine received notice of this decision no later than December 20, 2016, which means the latest it could have filed suit was in late February of 2017. Because Southwest Marine failed to comply with the statutory deadlines, it has lost all rights and remedies related to any claims it may have submitted to the Board, including the right to file suit. *See* 12 U.S.C. § 1787(b)(6)(B).

In sum, the Court concludes the Bond is an asset of the Board and that Southwest Marine was required to submit its claims to the Board prior to filing suit. It also concludes that even if Southwest Marine's submission of the Notice of Rescission and the premium refund check constituted the submission of a claim, Southwest Marine failed to file suit by the statutory deadline. Accordingly, the Court finds that it lacks jurisdiction over the claims in Southwest Marine's complaint, and it grants the Board's motion for summary judgment with respect to those claims.

## II. Summary Judgment

### A. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the party moving for summary judgment has made an initial showing that there is no evidence to support the opposing party's case, the opposing party must come forward with competent summary judgment evidence sufficient to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In ruling on a motion for summary judgment, the Court must not make credibility determinations or weigh evidence, and the court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000);

*Anderson*, 477 U.S. at 254–55; *Matsushita*, 475 U.S. at 586; *Washburn*, 504 F.3d at 508. But it is not the court's duty to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rather, it is the nonmovant's duty to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the nonmovant's claim. *Id.* Additionally, mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are likewise not competent summary judgment evidence. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

B.   **Application**

As noted above, the Board has asserted a counterclaim alleging Southwest Marine breached the Bond by failing to compensate Lakeside for its losses. *See* Def.'s Am. Answer [#28] at 11. Southwest Marine asserts several affirmative defenses to this claim, but the Board contends § 1787 deprives this Court of jurisdiction over those affirmative defenses. The Court disagrees.

Section 1787(b)(13)(D) applies only to certain "claim[s] or action[s]." Such terms do not encompass affirmative defenses. *See Affirmative Defense,* Black's Law Dictionary (6th ed. 1990) ("A *response to a plaintiff's claim* which attacks the plaintiff's right to bring an action, as opposed to attacking the truth of the claim."(emphasis added)); *see also Nat'l Union Fire Ins. Co v. City Savings, F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994) ("[I]t is clear that a defense or affirmative defense is not properly called an 'action' or a 'claim' but is rather a *response* to an action or a claim." (emphasis in original)). Moreover, other statutes demonstrate Congress understands there is a distinction between claims and defenses. *See* 12 U.S.C. § 5529(b)(1) ("The terms of any residential mortgage loan that is part of any purchase by the Secretary under this chapter shall remain subject to all claims and defenses that would otherwise apply . . . ."); *see also* 11 U.S.C. § 363(o) ("[S]uch person shall remain subject to all claims and defenses that are related to such consumer credit transaction . . . ."). When Congress has intended for a statute to apply to both claims and defenses, it has explicitly said so.

The Board advances another argument for why the Court lacks jurisdiction over Southwest Marine's affirmative defenses. According to the Board, even if the jurisdictional bar does not apply to affirmative defenses, Southwest Marine's declaratory judgment action and affirmative defenses seek the same relief. *See* Mem. in Support [#52] at 13–14. And, the argument goes, since the relief requested by Southwest Marine's affirmative defenses mirror the relief requested in their complaint, if the Court lacks jurisdiction over the claims in Southwest Marine's complaint it must also lack jurisdiction over Southwest Marine's affirmative defenses. *See id.*; *see also Nat'l Union*, 28 F.3d at 394 ("Courts should not allow parties to avoid the [FIRREA's jurisdictional bar] by simply labelling what is actually a counterclaim as a defense or an affirmative defense.")

11

This argument is unpersuasive. To begin with, Southwest Marine's declaratory judgment claims do not seek the same relief as its affirmative defenses. In its Amended Complaint, Southwest Marine requests the Court to "issue a binding declaratory judgment" on five different claims. By contrast, Southwest Marine's affirmative defenses do not seek any relief, but rather serve to negate one of the elements the Board must prove in its breach claim, namely that a contract existed between the Board and Southwest Marine. *See* Am. Answer [#27] at 9–15; *see Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007) ("To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed . . . ."). Nor are Southwest Marine's affirmative defenses properly considered counterclaims because counterclaims are "essentially . . . action[s] which assert[] a right of payment." *Nat'l Union*, 28 F.3d at 394. Indeed, the Third Circuit in *National Union* specifically accepted characterizing rescission as an affirmative defense. *See id.* Accordingly, the Court concludes it has jurisdiction to hear Southwest Marine's affirmative defenses.

### B. Court Action Affecting Powers of the Board Under § 1787(g)

The Board finally contends that summary judgment is also appropriate on Southwest Marine's affirmative defenses because rescinding the Bond would constitute court action that restrains the Board from exercising two of its powers: the power to collect all obligations and money due to the credit union and the power to preserve and conserve the assets and property of the credit union. *See id.* at 14–15; *see also* 12 U.S.C § 1787(g) (prohibiting courts from taking any action that would "restrain or affect the exercise of power or functions of the Board as conservator or liquidating agent"); *see also id.* § 1787(b)(2)(B) (enumerating the Board's powers). In response, Southwest Marine argues § 1787(g) does not apply because the Board's

12

ability to collect on a void bond is beyond its statutory powers and because its affirmative defenses do not seek to restrain the exercise of the Board's powers. *See* Resp. [#55] at 3, 19.

The Court concludes that § 1787(g) does not bar Southwest Marine's affirmative defenses. The Board's arguments assume that it is owed money on the Bond and that the Bond is the property of the Board, yet both of these assumptions are at issue in this litigation. The fallacy of the Board's argument is perhaps best illustrated by considering the potential results of this litigation. If the Court finds Southwest Marine's affirmative defense to be without merit and rules in favor of the Board on its counterclaim for breach, the Board will be free to collect on the Bond and its powers will in no way be "restrain[ed] or affect[ed]." If the Court agrees with Southwest Marine's affirmative defenses and finds the Bond was rescinded, there would be no money for the Board to collect or property to preserve and conserve and, consequently, none of the Board's statutory powers would be "restrain[ed]" or "affect[ed]." To accept the Board's argument under these circumstances would effectively rewrite § 1787(b) to give the Board the power to collect all obligations and money *potentially* due to the credit union. The Court declines to engage in such statutory revision.

Furthermore, the cases cited by the Board are easily distinguishable. In *Ward v. Resolution Trust Corp.*, 995 F.2d 99 (5th Cir. 1993) (per curiam), the Fifth Circuit refused to rescind the sale of a suite of assets owned by the Resolution Trust Corporation because even if the sale was conducted in an improper or illegal manner, it was indisputable that the Corporation had the statutory authority to conduct the sale. *Id.* at 103. And *Carney v. Resolution Trust Corp.*, 19 F.3d 950 (5th Cir. 1994) (per curiam), did not even involve a rescinded asset but rather considered whether the district court could enjoin the Corporation from pursuing a state court claim against former officers of a failed financial institution. *See id.* at 956–57. Finally, even if

*Ward* and *Caren* were analogous to this case, as per curiam opinions they are not binding on this court. The Board has thus failed to meet its burden to show that Southwest Marine's affirmative defenses fail as a matter of law, and the Court consequently denies the Board's motion for summary judgment on those claims.

## Conclusion

Because Southwest Marine has failed to comply with the requirements under § 1787(b), the Court lacks jurisdiction over the claims in its complaint and consequently grants the Board's motion on those claims. By contrast, because the Court has jurisdiction over Southwest Marine's affirmative defenses and those affirmative defenses are not precluded by § 1787(g), the Court denies the Board's motion on the affirmative defenses.

Accordingly,

IT IS ORDERED that Defendant National Credit Union Administration Board's Motion for Summary Judgment [#51] is GRANTED IN PART and DENIED IN PART consistent with the above opinion.

SIGNED this the 19th day of August 2019.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE